Filed 5/15/24  P. v. Simmons CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CARL DWAYNE SIMMONS,<br><br>    Defendant and Appellant. | 2d Crim. No. B329462<br>(Super. Ct. No. SB214013)<br>(Santa Barbara County) |

In 1996, Carl Dwayne Simmons was convicted of a number of crimes relating to the kidnapping and sexual abuse of a juvenile.  The court sentenced Simmons to 27 years four months, plus life with the possibility of parole in 15 years.  The sentence included two years for two prior prison term enhancements pursuant to former Penal Code section 667.5, subdivision (b).[1]

Simmons petitioned for resentencing pursuant to section 1172.75.  The trial court struck the prior prison term

---

[1] All statutory references are to the Penal Code unless otherwise stated.

enhancements, but otherwise reimposed the original sentence. Simmons contends the trial court erred in reimposing the original upper term and reimposing consecutive sentences. He also contends the court erred in failing to update his custody credits.

We remand for the trial court to update Simmons's custody credits. In all other respects, we affirm.

## FACTS

A jury found Simmons guilty of false imprisonment by violence (§ 236) (count 1); rape by force or violence (§ 261, subd. (a)(2)) (count 2); forcible oral copulation (former § 288a, subd. (c)) (counts 3 and 4); sodomy by use of force (§ 286, subd. (c)) (count 5); rape by foreign object (§ 289, subd. (a)) (count 6); and possession for sale of cocaine base (Health & Saf. Code, § 11351.5) (count 7). The jury also found true that Simmons personally used a deadly weapon in connection with counts 5 and 6. (Former § 12022.3.) Two prior prison term enhancements were also found true under former section 667.5, subdivision (b).

### *Underlying Offense*[2]

Lilly O., who was 17 years old at the time of trial, obtained a sack of crack cocaine from Simmons. She intended to sell the cocaine. She believed it would sell for $150 and that she would get to keep $50. Instead, her roommate's stepbrother stole the cocaine. Lilly O. knew she would be in trouble with Simmons when she could neither give him the money nor return the drugs.

Simmons found Lilly O. at her home. When Lilly O. told Simmons that she did not have the drugs or the money, he told her she was going to get "broke off." Lilly O. understood this to

---

[2] The facts are taken from our opinion in Simmons's appeal of the original conviction. (*People v. Simmons* (Feb. 17, 1998, B108576) [nonpub. opn.].)

mean she would be beaten or killed.  Simmons told her to get dressed for work.  Because he picked out a short skirt for her, she assumed he was talking about prostitution.

Lilly O. put on the clothes Simmons chose for her and left the residence with him.  She did not try to run because she believed she could not hide all her life.  Simmons threatened that if she tried to escape he would shoot her.  After they stopped at a number of places, he took her to a motel in Carpinteria.

In the motel room Simmons became physical and rude.  He locked all three locks on the door.  He told her to remove her clothes and perform oral sex on him.  She complied out of fear.  After she was done, he made her sit in the corner "Indian style" with knees "smashed up to the wall."  Circular bruises appeared on her knees as a result of them being smashed against the wall.

After Lilly O. sat in the corner for about 20 minutes, Simmons pulled her up by the hair.  He told her to orally copulate him again and she complied.

The next sex act Lilly O. could remember was "regular sex."  She told Simmons to stop, but he would not.  She was crying and told him it hurt, but it had no effect on him.

During Lilly O.'s captivity in the motel room, she was made to sit in the corner two or three times.  Simmons hit her on the head with his open hand and his closed fist.  When he hit her with his fist, her head hit a dresser, raising bumps on her head.  Simmons told her not to scream or cry or he would kill her.  He told her he was going to put duct tape over her mouth and watch her suffocate.

At one point he ran a razor down her face, causing a bald spot on her cheek.  He told her it would be sad if he scarred her for life.  He said the razor was a "legal weapon."  She said it felt

like he was really going to hurt her.  He told her, "This is true pimp shit, and this is Inglewood."

At another point while Lilly O. was in the corner, Simmons put a belt around her neck and tightened it.  She thought she was going to die because she could not breathe.  He took the belt off.  She felt nauseated and light-headed.  She could feel her pulse in her face.  He told her she was no fun because she could not even scream or cry in the way he wanted.

Finally, just before they left the motel, Simmons told Lilly O. he was going to sodomize her.  Before he sodomized her, he put baby oil on his finger and inserted it in her "butt."  While he was sodomizing her, she cried and told him it hurt, but he kept on going even harder.

After Simmons and Lilly O. left the motel room, they went to Simmons's car.  Simmons received a call on his pager.  They went back to the motel so that Simmons could use a pay phone near the office.  A man was using the pay phone.  As Lilly O. and Simmons approached, Lilly mouthed "help me" to the man.  The man, who happened to be a Los Angeles County Deputy Sheriff, detained Simmons.  Lilly O. ran into the motel office, leaped over the desk, and curled into a ball in the manager's apartment.

Santa Barbara County Sheriff's Deputies arrived at the motel.  Simmons volunteered to a deputy that he and a friend were at the motel and they had sex.  A pat-down search of Simmons yielded a marijuana pipe and cocaine.

*Original Sentence*

The trial court sentenced Simmons to a determinate term of 27 years four months in state prison as follows:  1) the upper term of eight years for count 2; 2) the upper term of eight years, consecutive, for count 3; 3) the upper term of eight years,

4

consecutive, for count 4; 4) one-third the middle term, eight months, consecutive, for count 1, stayed under section 654; and 5) one-third the middle term, one year four months, consecutive, for count 7. For count 5 and 6, the court sentenced Simmons to life with the possibility of parole in 15 years under section 667.61, subdivision (e)(4). The court imposed two years in prison, consecutive, for the enhancements under former section 667.5, subdivision (b).

*Section 1172.75 Motion*

In September 2022, Simmons filed a motion for resentencing pursuant to section 1172.75. Simmons requested that, in addition to striking the prior prison term enhancements, the trial court should reduce the upper term sentences on counts 2, 3, and 4, and impose concurrent sentences on counts 3, 4, and 7. The court struck the prior prison term enhancements, but otherwise reimposed the original sentence.

In deciding to reimpose the original sentence, the court stated:

"The Court has considered [California] Rule[s] of Court[, rule] 4.421(a) in deciding to impose the upper term, the factors in aggravation, that the crimes involved greatviolence, threat of great bodily harm, the acts involved a high degree of cruelty, viciousness, or callousness, and that the victim was particularly vulnerable.

"The Court also considered the factors under [California] Rule[s] of Court[, rule] 4.421(b) that [Simmons] engaged in violent conduct that indicates a serious danger to society, that his prior convictions as an adult were increasing in seriousness, that he was on parole at the time the crimes were committed.

5

"The Court has also considered [California] Rule[s] of Court[, rule] 4.423, the circumstances in mitigation, and the only mitigating factor the Court found was that [Simmons] was 24, his age at the time of the crime.The Court has weighed the mitigating factor against the numerous aggravating factors and found that the aggravating factors outweigh the one mitigating factor, which [is cause] for an upper term for the sentences in Counts 2, 3, and 4.

"I've also considered [California Rules of Court, rule] 4.425 in deciding to impose a consecutive rather than concurrent sentence."

## DISCUSSION

### I

Section 1172.75, subdivision (a) provides that a sentence enhancement for a prior prison term (§ 667.5, subd. (b)) imposed prior to January 1, 2020, is invalid.  Section 1172.75, subdivision (c) requires the court, upon finding a judgment includes such an enhancement, to recall the sentence and resentence the defendant.  In resentencing, the court must apply any changes in the law that reduce sentences or provide for judicial discretion so as to eliminate disparity and promote uniformity in sentencing. (*Id.*, subd. (d)(2).)

### II

Simmons contends the trial court erred in reimposing the upper term on counts 2, 3, and 4.

Simmons relies on section 1170, subdivision (b)(2), which provides, in part:  "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts

underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

Simmons points out that the circumstances in aggravation that justified the imposition of the upper term on counts 2, 3, and 4 were not stipulated by him or found true beyond a reasonable doubt at trial.

But Simmons was not resentenced under section 1170. He was resentenced under section 1172.75. The resentencing scheme specific to section 1172.75 applies.

Section 1172.75, subdivision (d)(4) provides: "Unless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

Under section 1172.75, subdivision (d)(4), the phrase "[u]nless the court originally imposed the upper term" carves out an exception to the requirement that aggravating factors must be admitted or proven. Here, because the trial court originally imposed the upper term on counts 2, 3, and 4, there was no need for a stipulation or proof beyond a reasonable doubt to reimpose the upper term.

Simmons's reliance on *People v. Butler* (2023) 89 Cal.App.5th 953, review granted May 31, 2023, S279633, is misplaced. *Butler* did not involve resentencing under section 1172.75.

III

Simmons contends the trial court erred in imposing consecutive sentences on counts 3, 4, and 7.

Count 2, rape, and counts 3 and 4, forced oral copulation, are crimes enumerated in section 667.6, subdivision (e). Section 667.6, subdivision (d)(1) provides: "A full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions."

Section 667.6, subdivision (d)(2) provides: "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon the defendant's actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned the opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."

Under section 667.6, subdivision (d)(1), consecutive terms are mandatory if the crimes involve the same victim on separate occasions. In determining whether the sex crimes occurred on separate occasions, the trial court must consider whether, between one crime and another, the defendant had a reasonable opportunity to reflect on his actions.

Here, after the first oral copulation, Simmons made his victim sit in the corner for 20 minutes before forcing her to orally copulate him again. That was more than an ample opportunity for Simmons to reflect on his actions before committing the

8

second forced oral copulation. The trial court so found at Simmons's original sentencing. There is no reason to believe the court made a different finding here.

As to count 7, the trial court's references to the prior sentencing transcript and California Rules of Court, rule 4.425 were sufficient to support a consecutive sentence.

IV

Simmons contends the matter must be remanded to the trial court to correctly calculate his custody credits. The People agree.

When a court resentences a defendant, it must recalculate his custody credits to the date of resentencing. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 29.) The court failed to do so here.

The matter is remanded to the trial court to recalculate Simmons's custody credits to his May 31, 2023, resentencing date and to amend the abstract of judgment to reflect those credits. In all other respects, the judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.                    BALTODANO, J.

9

Von Deroian, Judge

Superior Court County of Santa Barbara

_____

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, William H. Shin and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.